## THE SCHIEDAM.[1]

### MILLARD v. THE SCHIEDAM.

(District Court, S. D. New York. December 14, 1891.)

1. SALVAGE—TOWING DISABLED STEAMER.
   The machinery of the steam-ship Schiedam had been disabled, so as to compel the vessel to anchor some 15 miles east of Sandy Hook, and about 4 miles from the Long Island shore. The weather was hazy. The powerful tug Evarts came up, and agreed to take her to her dock in Hoboken for $1,000. The Evarts was the only tug in sight at the time. She towed the steam-ship to her dock as agreed, with some assistance from other tugs met on the way, some of which had been sent by the agents of the ship. The Schiedam and cargo were worth $185,000; the Evarts was worth $30,000. *Held*, that the amount agreed on was reasonable, and should be awarded.

2. SAME—CONTRACTS FOR AGREED AMOUNTS.
   Salvage, viewed as a reward, is not properly the subject of a binding contract in advance. Courts of admiralty fully examine into the circumstances of the service in the interest of the property saved, and award no more than a reasonable sum, and are not bound by the amount agreed on beforehand.

In Admiralty. Suit to recover salvage. Decree for libelant.

*Wilcox, Adams & Green*, for libelant.

*Wing, Shoudy & Putnam*, for respondent.

BROWN, J. The compensation awarded in a court of admiralty for salvage services is not given as a mere *quantum meruit* for the work and labor done, but on grounds of public policy, in the interest of navigation, and for the safety of property and life, and as an encouragement and reward for the readiness, promptitude, and energy necessary to secure those ends, both in the conduct of the salvors personally, and for the vessels and other appliances previously provided for such service. Viewed as a reward, therefore, salvage is not properly a subject of any binding contract in advance, except as a limitation of the salvors' demands. In cases of present distress and peril the very necessity for salvage service presupposes that the parties do not stand upon equal terms as respects any contract they may make on the subject, any more than a captured prisoner in stipulating with brigands for his ransom. While a sum agreed on in advance and in the presence of danger may, therefore, limit the salvor, it has little or no binding effect upon the other party. All courts of admiralty freely examine into the circumstances in the interest of the latter, and award no more than a reasonable sum, without regard to the amount agreed on. See *Chapman* v. *Engines, etc.*, 38 Fed. Rep. 671, 672, and cases there cited. The Code of the Netherlands, to which country this vessel belonged, like the Codes of several other maritime countries, expressly provides (section 568) that any agreement as to salvage compensation made at sea before the danger is over "can be modified or annulled by the judge."

In the present case the Schiedam had become wholly disabled in her machinery, so as to be compelled to anchor some 15 miles to the east-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

ward of Sandy Hook, and about 4 miles from the Long Island shore. The weather was hazy. She was of the value of about $60,000, and her cargo of the value of about $125,000; in all, about $185,000. The libelant's tug Evarts came to her between 2 and 3 o'clock in the afternoon. No other tugs were then in sight. If she did not accept the services of the Evarts, it was quite probable that in the hazy weather she might not be discovered by any other tug in time to be taken into port before the next day, and in that case she would incur the chances of the weather in the mean time. It is to the interest of commerce and navigation that reasonable encouragement should be given to cruising beyond the limits of the port by vessels capable of rendering salvage service to those who are in need of succor. The Evarts was a powerful tug, adapted to this business, costing $38,000, and at this time worth $30,000. In view of all the circumstances and of the value of the Schiedam and cargo, I do not think the sum of $1,000, which was the sum contracted for, is any more, to say the least, than I should have allowed for the services of the Evarts as the first tug that had come to the steamer's aid. The three other tugs, subsequently met, added their services, and have been paid at towage rates. The first was met about an hour after the Evarts had begun her towing; the other two were sent down from New York by the agents of the Schiedam, after news had been received by telegraph of her need, and were met not far from Sandy Hook at about half past 5 P. M. Early the next morning the Evarts resumed her work, and took the Schiedam to the dock at Hoboken, as had been agreed, with the aid, however, of the Goodwin, which the agents of the vessel sent to assist, and which was necessary, at least in docking. It is clear, however, from the libelant's evidence that any additional assistance in docking would have been provided by one of their own tugs, had not the respondent's agent volunteered to send the Goodwin. Before making this proposal, the agent was informed of the libelant's contract to take the steamer to the Hoboken dock for a thousand dollars. As this sum is all that is claimed, and does not exceed what this court would award for the Evarts' services, without reference to the additional help that the master and the agent thought it judicious to employ, it is not necessary to consider further any questions relating to the other tugs, as it is clear that they were not employed on the Evarts' account.

Decree for $1,000, and costs.