THE ERNEST M. MUNN.

LOWNDES v. THE ERNEST M. MUNN.

(District Court, D. Connecticut. May 24, 1894.)

No. 1,009.

1. SALVAGE—COMPENSATION.

A steam barge worth $2,500, laden with a cargo worth $600, was found derelict and in peril in Long Island sound, and was towed to port by the salvors, who were in an oyster steamer. The time consumed was 6½ hours; the distance towed was 3½ miles; and the rescue was made with danger to the life of one of the salvors and some danger to the oyster steamer, which was worth about $15,000. *Held*, that the salvors were en-titled to $800 compensation.

2. SAME—DURESS.

Where the owner of a vessel in the possession of a salvor takes posses-sion by force, threatens the salvor with violence, and induces him to ac-cept less than his claim for salvage, such settlement is not binding on the salvor.

Libel by Stanley H. Lowndes against the barge Ernest M. Munn for salvage.

Seymour & Knapp, for libelant.
Hyland & Zabriskie and A. L. Shipman, for claimant.

TOWNSEND, District Judge. This is a libel in rem for salvage. At about 7 o'clock on the morning of November 28, 1893, the libelant, Stanley H. Lowndes, with a crew of six men, started in his oyster steamer, the J. Howard Lowndes, from Norwalk harbor, to go to work on his oyster beds in Long Island sound. When they got outside they saw the steam barge Ernest M. Munn adrift, about a mile and a quarter from the east end of Copp Island. They went up to her, bow on, and one of the crew jumped aboard. She had been abandoned. Her heavy hawsers had parted, and she was waterlogged. There had been a hard southeast storm through the night, and the water was very rough that morning. The salvors first attempted to tow her in an easterly direction, but the sea was so rough, and she was so heavy, with her cargo of coal and the water in the hold, that they could not make any progress. They then got her alongside, but she rolled and heaved so heavily that they could not control her, and were in danger of being swamped. Finally they succeeded in towing her very slowly with the sea, by a line from her bow, inside of the Norwalk Islands, where the water was smooth, and from there took her down to Five Mile river, reaching there at about half past 1 in the afternoon, and made her fast to the dock. It is agreed that the value of the barge saved was $2,500, and of the cargo $600, and that the total net freight to destination was $83.08. The libelant's oyster steamer was worth about $15.000.

The first question presented is as to the amount of salvage which should properly be allowed, in view of the conditions existing in this case. The barge was derelict and in peril in Long Island sound. She would probably not have drifted ashore for two hours. If she had done so, she probably, although not certainly, would have gone on the rocks of the Norwalk Islands. The time consumed in the salvage service was about 6½ hours. The distance towed was about 3½ miles. The services rendered were meritorious and successful. They involved danger to the life of the sailor who jumped aboard the barge, and some danger to the salving steamer. Seven men were engaged in the salvage service from 7:30 in the morning till 1:30 in the afternoon. One good day's work, with good weather, was worth $100 to the libelant, Lowndes. An examination of the salvage cases shows a great diversity in the proportional amounts awarded, by reason of the widely varying conditions. It seems to me that, in cases most nearly resembling the one at bar, the amount of the award has generally approximated 25 per cent. of the value of the property saved. I think such award should be allowed in this case, unless the court is bound to enforce a certain alleged agreement hereafter to be considered.

On the second day after the occurrences heretofore stated, the claimant, Calahan, the owner of the barge, came to Five Mile river, and offered to give the salvors $500 and such additional sum as could be obtained from the insurance company for a release of the barge. The salvors refused to settle for less than $800. On the

following Sunday he returned early in the morning with a tugboat, and came up alongside the barge. No one except the claimant was in sight on his tugboat. The libelant, Stanley Lowndes, and several other persons, saw her coming, and ran aboard the barge. The claimant stepped onto the barge, and, when said libelant ordered him off, he reached down to untie the line by which she was made fast. Thereupon Lowndes leveled a gun at the claimant, and again ordered him to get off, saying: "You get off, or I will kill you." The claimant then called out, "Come on, boys," and a crowd of from 11 to 18 men rushed out from the engine room and cook room of claimant's tugboat, made threatening demonstrations, and offered to fight with libelant, Lowndes, and his companions. The claimant said, "We have come to get the boat;" and he challenged Lowndes to go ashore and fight, to settle the question as to whether the amount to be paid should be $500 or $800. Under these circumstances, the claimant insisting that he was going to take the barge, boasting that he had $1,500 with him, and that he would give $600 to take the barge, the libelant, after a consultation with the engineer, said: "If you want to take this barge out of here to-day, you give $600, and I will give you a receipt." Thereupon the money was paid to the engineer, and the boat was released. The claimant understood this payment to be in full of all claims. He took the barge to Wilson's point, in said district, and left her there. The libelant, Lowndes, immediately thereafter libeled her, and brought her back to Five Mile river. The claimant had originally deceived the salvors in order to persuade them to reduce the amount of their claim for salvage, and when he found that they would not accept his offers, as aforesaid, he gave them to understand that he would go to New York, and see what he could do towards procuring an additional sum from the insurance company for a release of the barge. From the appearance and conduct of the parties and their witnesses upon the hearing, I conclude that the testimony of the salvors is substantially true, and that the claimant, with his gang of men, came from New York on said Sunday morning with the express purpose of obtaining possession of the barge and a settlement of said claims, by threats and intimidations, provided he could not effect his object by other means. It does not seem to me that the court would be justified in enforcing a settlement made under such conditions as existed in this case. The following citations show that a court will scrutinize salvage agreements, and will not enforce them when they are inequitable or oppressive: Dr. Lushington, in The Helen and George, 1 Swab. 368; The Wellington, 48 Fed. 475; The Agnes I. Grace, 2 C. C. A. 581, 586, 51 Fed. 958; The Schiedam, 48 Fed. 923; The Alert, 56 Fed. 721, 724; Macl. Shipp. 651; 2 Pars. Adm. 306, 307. I think the claim of the salvors for $800 was a reasonable and just one, and should be allowed. Let a decree be entered in favor of said salvors for the balance of $200, with costs. The parties may introduce further evidence, if they so desire, as to the proper apportionment of the award.