### DILKES v. JANSEN.

#### THE LYGSLIMT.

(Circuit Court of Appeals, Fourth Circuit. November 13, 1919.)

#### No. 1720.

TOWAGE ⬖7—EVIDENCE ESTABLISHING CONTRACT FOR EXTORTIONATE RATE.

Decree affirmed, holding exorbitant and not enforceable an agreement by the master of a Norwegian barque, who had never before been to the port, and spoke and understood English imperfectly, to pay $1,900 for towage from Lynnhaven Roads, inside the capes, to Baltimore, made on false representations by the tug master that it was the customary rate.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit by George R. Dilkes, trading as George R. Dilkes & Co., against the barque Lygslimt; H. Jansen, master and claimant. From the decree, libelant appeals. Affirmed.

This is an appeal on behalf of Dilkes, libelant below, from the decree of the United States District Court for the District of Maryland, dated February 3, 1919. It arises out of what is contended is a grossly extortionate charge of $1,900, made by the said Dilkes, owner of the tug Sybil, for towing the Norwegian barque Lygslimt from Lynnhaven Roads (which is within the capes) to Baltimore.

---

⬖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

It is insisted that, if an agreement was entered into at all between the master of the barque and the master of the tug Sybil, such agreement was the result of a false and fraudulent representation, made by the master of the tug to the master of the barque (a foreigner, for the first time in this port), that the regular towage rate from Lynnhaven Roads to Baltimore was $1,900, and because the master of the Lygslimt, who spoke but little English, believed that whatever figure he agreed to was subject to revision by the United States Shipping Board; his vessel being subject to government regulation.

The case is unique in several particulars: (1) That the libelant was in effect accorded two hearings on his libel; and (2) that claim is made by Dilkes as the owner of the tug Sybil, of which Powell, his agent, was master, when, from the evidence and argument of counsel, it appears that the contract made by the master of the tug for such towage was not only without authority of Dilkes, the owner of the tug, but against his direct order and instructions, whose agent the master of the tug necessarily was.

An admittedly legal tender was made by the claimant of the barque of $1,200 for such towage, because of the trifling amount of difference involved, and despite the fact that the towage had been obtained by fraud and misrepresentation, and that the Lygslimt had suffered damage because the agreement of towage had not been completed in two particulars, viz.: (a) That the tug did not proceed with reasonable dispatch, taking 55 hours to reach the port of Baltimore, due to several breakdowns of the tug, whereas under normal conditions Baltimore should have been made in from 24 to 36 hours at the maximum, the weather being altogether favorable; and (b) because the master of the tug failed to dock his tow, as per agreement.

At the first hearing the court announced that it was prepared to decide the case against the libelant, but, being anxious to hear the master of the barque, continued the case until January 10th, for that purpose, although then prepared, by reason of the fraudulent misrepresentation as to towage rate, and because of the extortionate charge, to hold as indicated. At the second hearing, in addition to finding fraudulent misrepresentation as to regular towage rate, the court being impressed, owing to the difficulty in getting the master's testimony, with his slow apprehension of English, realized that it was impossible for him to deal on fair terms with Powell.

The court also found that the master's belief was that the rate agreed upon was subject to review by the Shipping Board, and that there was under the circumstances, no such meeting of minds as would justify the court in holding the barque to the extortionate charge made, in the case. Accordingly a decree was entered in favor of the libelant for $1,400, less the docking costs of $148, or a net decree of $1,252, without interest, and each side to pay its own costs. To this decree appellant excepted, and the case now comes here on appeal.

Clifton S. Brown, of Baltimore, Md., for appellant.
George Forbes, of Baltimore, Md., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The court below very clearly and succinctly states the ground upon which the contract is modified, in the following language:

"I believe that Capt. Powell did say that the sum he asked was the rate. I find that this captain was scarcely capable, through his slow apprehension of English, of dealing on fair terms. I find that being, as he supposed, at all events, in some relation to the Shipping Board, he assumed that any rate he agreed to, if it was not a fair one, would not be binding anyhow. He assumed that it would be subject to review by some proper authority. Under those circumstances, I do not think there was any such meeting of minds as would justify me in holding the bark to the extravagant, almost extortionate charge that was made in this case. I think it is exceedingly likely that, if

Capt. Powell had not been called back, very shortly after he left the bark, he would himself have come back. I don't know, but I think it is highly probable."

The learned judge saw the witnesses and heard them testify, thus being afforded an opportunity to determine as to their credibility, and to weigh the evidence where there was any conflict. In this case, the captain was unable to speak the English language well, and, of course, had greater difficulty in understanding the same when spoken by another. Capt. Jansen, master of the Lygslimt, testified:

"Q. Tell the court in your own words what happened with reference to this tug's towing you up the bay, and in the first place tell the court if you hailed the tug, or did the tug speak you, do you remember? A. Yes.

"Q. Did you hail the tug Sybil, or did the tug speak you? A. The tug came alongside and spoke to me and wanted a tow.   *   *   *

"Q. Then what was said? A. About 6 o'clock in the evening—

"Q. Was it dark then? A. No; not quite dark; nearly dark.

"Q. What was said to you by the tugboat master? A. I asked him how much he charge. Then he said $1,800. I offered him $1,400, and he said, 'I won't take it.' I offered him $1,500. He said he would not take less than that, and then he said $1,800 was the rate.   *   *   *

"Q. What did he say at the time, just before he took you in tow? A. We did not speak any more; he said it was the rate, and did not speak any more."

Counsel for the appellant sought by cross-examination of Capt. Jansen to show that what Capt. Powell said to Capt. Jansen was that the amount he proposed to charge was his rate, and in reply to the questions propounded Capt. Jansen stated most positively that what Capt. Powell said was that the proposed charge was *the* rate, as is shown by the following questions and answers:

"Q. Then didn't he say this to you, 'All right, that is my price, and you can either take it or leave it?' A. He did not say 'my price.'

"Q. Never said that? A. He said, 'That is *the* rate.'

"Q. You say he did not say that was his price? A. No; he said 'that is the rate.'

"Q. Did he say *his* rate? A. No.

"Q. Just said it was *the* rate? A. Yes."

The fact that the captain was under the impression that the Shipping Board had the power to finally determine as to whether the charge was a correct one is shown by his testimony as to this point. The captain, while testifying, was asked, among other things, why he agreed to pay $1,900, and in reply thereto said:

"I don't quite understand. We got contract where we have the Shipping Board's contract. They pay all my expenses in the port; Shipping Board and Suffern were to pay all my expenses in the port (court)."

In addition to the captain's statement we have that of the pilot, who corroborates the captain's version as to what was said about the rate. The pilot, under the court's interrogatories, testified as follows:

"The Court: There was nothing said by the captain of the Sybil to the effect that this was the regular rate?

"The Witness: Yes, sir.

"The Court: What did he say?

"The Witness: He said: 'That is what they are getting—towboats are getting—to tow barques to Baltimore.'

"Q. (by Mr. Forbes): What amount? A. $1,800 and $1,900.
"Q. You heard Capt. Powell make that statement to Capt. Jansen? A. Yes; Capt. Powell forgets, but I know those were his words; exactly, sir, absolutely."

Thus it will be seen that the testimony of the master was corroborated by the witnesses. It is true that this testimony is contradicted by Powell, the master of the tug Sybil; but the court evidently did not believe his statement, finding in favor of the appellee.

Counsel for appellant insists that, inasmuch as Davis testified that he informed Jansen that the rate was higher than the usual rate, and also told him, "The price is rather high to tow to Baltimore," Jansen had no right to rely upon any statements that may have been made by Capt. Powell as an inducement to enter into the agreement, contending that, if the means of knowledge as to the rate were at hand, Jansen is precluded from claiming that he was defrauded through a false misrepresentation as to the facts upon which he relied, and that it was his duty to have availed himself of the knowledge which he thus obtained.

It being well established that Powell made a false statement upon which Jansen relied, he cannot now consistently contend that Jansen should not have believed what he said as to the proper rate. We think this contention is untenable, and therefore cannot be sustained. We think the court below was warranted in holding as he did. This view is sustained by the case of The Schiedam (D. C.) 48 Fed. 923; where Brown, J. (the court) said:

"While a sum agreed on in advance and in the presence of danger may therefore limit the salvor, it has little or no binding effect upon the other party. All courts of admiralty freely examine into the circumstances in the interest of the latter, and award no more than a reasonable sum, without regard to the amount agreed on."

In the case of Boggs v. The Loutra, Fed. Cas. No. 1601, reported in 3 Fed. Cas. 804, it was held, per syllabus, as follows:

"In moderate weather, a tug brought a Portuguese brig from 15 to 20 miles below Sandy Hook into New York Harbor; and her agents libeled the brig for $2,000, alleging that she was disabled and in distress, and that her master had agreed to pay that sum. For the brig, it was shown that she only required a pilot, that no one aboard could speak English, and that she only intended to offer 200 Portuguese milreas ($224), which had been tendered. Held, that the service was a towage merely, for which $224 was a reasonable compensation, and that even if the master agreed to pay $2,000, under apprehension of losing his vessel, the contract was exorbitant and not enforceable."

In the case of The Sophia Hansen (D. C.) 16 Fed. 144, Judge Benedict said:

"If this action was based upon a contract made between the master of the schooner that grounded on the West bank and the tug that pulled her off, as a contract for towage, the libelant could not recover, for the reason that the court would not enforce an agreement to pay $1,000 for a few hours of ordinary towage service; such an agreement being clearly unconscionable."

There it was held that an agreement to pay $1,000 for a salvage service was not conclusive, and should be considered in connection with the other facts bearing on the question as to the nature and value of the

service. Accordingly, the $1,000 agreed upon was reduced to $500, although this was a salvage service, and therefore a higher order of service than a towage service.

As we have stated, Jansen was a foreigner, and unable to speak the English language correctly, and it is obvious that he was at a great disadvantage in dealing with the master of the tug, who was at home, and perfectly familiar with the rates and conditions for services of this character. It is established beyond question that the facts upon which Jansen relied were false, and calculated to mislead the foreigner, who was practically helpless, and from the very nature of things had to rely upon the statement of the master of the tug as to what was a proper charge. It is evident that Jansen was unable to successfully cope with the master of the tug. Under the circumstances, the parties were not on equal terms in any sense of the word.

Therefore we think the learned judge below was amply warranted in reaching the conclusion that this contract should be modified, so as to conform to the customary rates for towage. It follows that the decree of the lower court should be affirmed.

Affirmed.